IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PETER S. MCCAMBRIDGE, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 16-1148 |
| | : | |
| v. | : | |
| | : | |
| SYLVIA MATTHEWS BURWELL, | : | |
| SECRETARY OF HEALTH AND | : | |
| HUMAN SERVICES, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

Smith, J.                                                                December 22, 2016

For the past eight years, the *pro se* plaintiff has attempted to have Medicare cover his services rendered as a "surgical first assistant" for various physicians. Despite being denied enrollment in the Medicare program, the plaintiff, acting under a business name and apparently undeterred from the denial of coverage, managed to obtain an identifier that allowed him to bill Medicare for his services. In 2013, three years after obtaining this identifier, a Medicare contractor audited the plaintiff's billings for 2012 and determined that he had wrongfully billed Medicare for the same beneficiaries that physicians had billed. Thus, the Medicare contractor assessed an overpayment and attempted to recoup it from the plaintiff. The plaintiff appealed from the assessment, and this appeal reached the Medicare Appeals Council for resolution.

The Medicare Appeals Council determined that Medicare did not cover the plaintiff's surgical first assistant services that he performed in 2012. The Council concluded that (1) the plaintiff, a surgical first assistant, was not authorized to receive payment directly under the Medicare statute because he was not a qualified, licensed health care provider; (2) the services for which the plaintiff billed Medicare were not payable as incident to a surgeon's services; and

(3) the plaintiff is not entitled to a waiver of the overpayment assessed against him, as he was not without fault when he billed Medicare and received payment for his services. This decision became the final decision by the Secretary of the United States Department of Health and Human Services (the "Secretary").

This matter is before the court on the plaintiff's appeal from the final decision by the Secretary. The parties have brought this appeal for the court's resolution by filing cross motions for summary judgment. The plaintiff has also filed a motion to remand for the court's consideration, and has requested that the court appoint counsel on his behalf. The plaintiff's motion for summary judgment and motion to remand are difficult to evaluate, as they do not identify specific facts that the Secretary failed to consider, and do not identify specific authority that the Secretary misapplied or misinterpreted. To the extent that the court is able to construe the plaintiff's arguments, the plaintiff appears to contend that the Secretary should have limited her decision to the Medicare contractor's initial reasons for seeking reimbursement from the plaintiff, and also that the Secretary misinterpreted Medicare statutes and regulations.

After reviewing the administrative record, the court finds that the record contains substantial evidence to support the Secretary's findings of fact, and that the Secretary's decision is in accordance with the law. In addition, the Secretary's review of all evidence contained in the administrative record was proper, and the Secretary's interpretation of the Medicare statutes and regulations was in accordance with congressional intent. Therefore, the court will grant the Secretary's motion for summary judgment and deny the plaintiff's motion for summary judgment and motion to remand. The court will also deny the plaintiff's request for appointment of counsel because he is not entitled to appointed counsel in this matter and the court declines to exercise its discretion to request counsel to represent him.

# I.   BACKGROUND

## A.   The Regulatory Framework Applicable to Claims for Medicare Reimbursement

Established by Title XVIII of the Social Security Act (the "Act"), Medicare is a federally subsidized health insurance program administered by the Secretary.  *Heckler v. Ringer*, 466 U.S. 602, 605 (1984) (citing 42 U.S.C. § 1395 *et seq.*).  Medicare provides health care benefits to persons age 65 and older, certain disabled persons, and individuals with end stage renal disease.  *See* 42 U.S.C. § 1395c (providing description of program).  Medicare Part A provides insurance for the cost of hospital and related post-hospital services.  *Regional Med. Transp., Inc. v. Highmark, Inc.*, 541 F. Supp. 2d 718, 720 (E.D. Pa. 2008) (citing *Heckler*, 466 U.S. at 605).  Medicare Part B, which is primarily at issue in this matter, "establishes a voluntary program of supplemental medical insurance covering expenses not covered by the Part A program, such as reasonable charges for physicians' services, medical supplies, and laboratory tests."  *Id.* (citing 42 U.S.C. §§ 1395j–1395w–4).

 "In order to expedite claims processing, Medicare reimburses providers for services before reviewing the medical records associated with the claims and verifying that the claims are valid."  *John Balko & Assocs., Inc. v. Secretary U.S. Dep't of Health & Human Servs.*, 555 F. App'x 188, 190 (3d Cir. 2014).  "Medicare contractors . . . then review and audit providers to ensure that payments are made properly."  *Id.* (citing 42 U.S.C. 1395l(e)).  "In addition to processing payments, Medicare [contractors] are charged with screening for fraud and initiating review or suspending payments when they have reliable evidence of wrongdoing."  *Regional Med. Transp., Inc.,* 541 F. Supp. 2d at 720 (citing 42 U.S.C. § 1395ddd; 42 C.F.R. § 405.371).

A provider may appeal a Medicare contractor's initial determination to deny a Medicare enrollment application or to revoke the provider's billing privileges.  42 C.F.R. § 405.803(a).

The appeals process consists of four levels of administrative review, followed by the possibility of judicial review after exhausting the administrative process. 42 U.S.C. § 1395ff (establishing the appellate process). A provider who is dissatisfied with the determination of a Medicare contractor, first appeals to the Medicare contractor for a redetermination by a hearing officer not involved in the initial determination. 42 C.F.R. §§ 405.803(b), 405.940. If the provider is dissatisfied with the redetermination, then the provider may appeal to a Qualified Independent Contractor ("QIC") for reconsideration. 42 C.F.R. § 405.960. If the provider is dissatisfied by the QIC's reconsideration, the provider may request a hearing by an Administrative Law Judge ("ALJ") in the Office of Medicare Hearings and Appeals. 42 C.F.R. § 405.1000. Finally, if the provider is dissatisfied with the ALJ's decision, the provider may request a review of the ALJ's decision by the Medicare Appeals Council ("MAC")[1] or the Departmental Appeals Board ("DAB"). 42 C.F.R. §§ 405.1100, 498.80. After exhausting all administrative appeals, a provider who meets the amount-in-controversy requirement may seek judicial review in federal district court. 42 U.S.C. §§ 405(g), 1395ff(b).

## B.   Factual Background and Procedural History

The *pro se* plaintiff, Peter McCambridge ("McCambridge"), submitted an application to the Centers for Medicaid and Medicare Services ("CMS") for enrollment in Medicare Part B in August 2008. *See In re: Peter McCambridge, C.F.A.*, DAB No. 2290, 2009 WL 5227273 at *2 (H.H.S. Dec. 17, 2009).[2] In his application, McCambridge indicated that he sought enrollment as a "surgical first assistant," based on his completion of a course entitled "First Assistant Course for Surgical Technologists." *Id.* A CMS contractor denied McCambridge's enrollment

---

[1] If an ALJ does not does not issue a timely decision following the provider's request for a hearing, the provider may escalate his appeal directly to the MAC. 42 C.F.R. § 405.1104.

[2] This DAB decision is not included in the administrative record. Nonetheless, the MAC's January 6, 2016 decision, which is presently before the court for review, cites the decision. *See* Administrative Record ("A.R.") at 4-6.

application on the grounds that McCambridge did not meet the Medicare enrollment and related Part B coverage requirements. *Id.*

After unsuccessfully appealing the denial of his enrollment to the CMS, McCambridge sought a hearing before an ALJ. *Id.* Following a hearing, the ALJ granted summary judgment in favor of the CMS, upholding its denial of McCambridge's Medicare enrollment application. *Id.* McCambridge appealed from the ALJ's decision to the DAB, and the DAB affirmed the ALJ's decision. *Id.* at *1.

In its December 2009 decision, the DAB concluded that the ALJ "correctly determined that the Medicare statute and regulations [did] not authorize CMS to enroll [McCambridge] in the Medicare program as a surgical first assistant" because, *inter alia* (1) a surgical first assistant did not provide "covered services" under Medicare, and (2) a person meeting the definition of a health care provider under HIPAA does not mandate a conclusion that the person is eligible to participate in Medicare. *Id.* at *3-7. McCambridge requested that the DAB reopen its decision, but the DAB denied his request on February 2, 2010. *In re: Peter McCambridge, C.F.A.*, DAB No. 2290, 2010 WL 744489 (H.H.S. Feb. 2, 2010).[3] McCambridge did not seek further review.

On February 9, 2010—one week after the DAB denied the request to reopen the decision denying Medicare enrollment—McCambridge obtained a National Provider Identifier ("NPI") from the National Plan & Provider Enumeration System using the business name "Surgical Billing Specialist." Administrative Record ("A.R.") at 6.

Three years later, in 2013, a Medicare contractor audited McCambridge's 2012 Medicare billings and determined that in sixteen of his billings, he had billed Medicare for the same beneficiaries as physicians had billed. A.R. at 95. As a result, the Medicare contractor assessed

---

[3] This DAB decision is also not included in the administrative record. Nonetheless, the MAC's January 6, 2016 decision, which is presently before the court for review, cites the decision. *See* A.R. at 4-6.

an overpayment and sought to recoup $7,833.54 from McCambridge.[4]   A.R. at 96.   In the billings at-issue, McCambridge had billed Medicare for surgical assistant services listing the "Surgical Billing Specialist" NPI he obtained in 2010 as his billing NPI, and the NPIs of two Medicare-enrolled physicians as the rendering providers.  A.R. at 7.

McCambridge appealed the overpayment assessment through the Medicare administrative review process, and properly escalated his appeal to the MAC after the period for an ALJ to adjudicate his appeal had expired.  A.R. at 69, 79.  In the MAC's January 6, 2016 decision—which became the final decision of the Secretary and is the decision from which McCambridge seeks judicial review—the MAC upheld the overpayment determination assessed against McCambridge.  A.R. at 15.  McCambridge then initiated this action by filing a complaint against the Secretary, Sylvia Matthews Burwell, on March 11, 2016.  Doc. No. 1.

In the complaint, McCambridge claims that he is seeking judicial review as to whether "an enrolled provider (surgeon) [can] bill for both the assistant and surgeon's fees, if, a valid medicare[*sic*] reassignment between the surgeon and a medicare[*sic*] enrolled supplier exists[.]" Complaint at 2.  McCambridge alleges that a physician is not prohibited from billing for both the physician's fees and the assistant's fees as long as a "valid Medicare reassignment form 855R" exists, and that in his case, such a reassignment is in place.  *Id.* at 1, 3.  McCambridge also claims that the initial reasons why the Medicare contractor sought reimbursement for services he billed include: (1) "the claims were thought to be previously adjudicated(duplicate [*sic*] claim)," and (2) "because they were already paid, the claims were not medically necessary."  *Id.* at 1-2. McCambridge contends that the Secretary should have limited her review of his claim to only the initial reasons for the refund request, and that the Secretary improperly considered additional

---

[4] While the October 4, 2013 letter from the Medicare CMS contractor, SafeGuard Services, LLC, seeks reimbursement of only $7,833.54, *see* A.R. at 96, McCambridge alleges that the Secretary demands reimbursement of $8,700.  Complaint without Jury Trial and Motion to Dismiss the Refund Request ("Complaint") at 1, Doc. No. 1.

issues, including: "enrollment issues for surgical first assistants" and "incident-to billing[.]"  *Id.* at 2.  McCambridge requests that the court "take the necessary steps to rescind the refund request[,]" as he contends that "the request has no merit."  *Id.* at 3.

Prior to serving the complaint, on March 15, 2016, McCambridge filed a "Motion for Conference with US Attorney," in which he sought "a 15-30 minute meeting with the US Attorney assigned to this case" so they could "go over the forth [*sic*] level Medicare Appeal" and "review the record" because it "would save the court time."  Doc. No. 2.  The court denied the motion on March 16, 2016, and informed McCambridge that he needed to complete service of process in accordance with Rule 4 of the Federal Rules of Civil Procedure.  Doc. No. 3

On May 5, 2016, prior to the Secretary filing a response to the complaint, McCambridge filed a motion for summary judgment.  Doc. No. 6.  The Secretary filed a motion to dismiss the complaint on May 16, 2016.  Doc. No. 7.  On May 20, 2016, McCambridge filed a single document containing (1) a response to the motion to dismiss, and (2) a motion to amend the complaint to reflect an additional $500,000 in damages for financial hardship.  Doc. No. 10.

After a telephone conference with the parties on June 1, 2016, the court entered an order (1) setting deadlines for the Secretary's filing of the administrative record and for the parties to file motions for summary judgment, and (2) denying without prejudice McCambridge's motion for summary judgment and the Secretary's motion to dismiss.  Doc. No. 12.  The Secretary filed the administrative record with the court on June 7, 2016.  Doc. Nos. 13, 14.  The Secretary filed an answer to McCambridge's complaint and his motion to amend the complaint (which the Secretary characterized as an amended complaint) on July 5, 2016.  Doc. No. 15.  McCambridge timely filed a motion for summary judgment on July 6, 2016. [5]  Doc. No. 16.  On July 8, 2016,

---

[5] Unfortunately, McCambridge failed to comply with the undersigned's policies and procedures by not filing a statement of undisputed material facts in support of his motion for summary judgment.

the Secretary timely filed a motion for summary judgment and statement of undisputed material facts in support thereof. [6]  Doc. Nos. 17, 18.

McCambridge then sent the court a letter in which he sought an extension of time to respond to the Secretary's motion for summary judgment so he could attempt to obtain counsel. In response to the letter, the court entered an order on August 5, 2016, staying the time to file responses to the cross-motions for summary judgment and scheduling a telephone conference on August 10, 2016, to discuss McCambridge's request.  Order, Doc. No. 19.

Notwithstanding the pending telephone conference, McCambridge filed a motion to remand on August 8, 2016.  Doc. No. 20.  The court held the telephone conference with the parties on August 10, 2016, after which the court entered an order on August 11, 2016, which (1) lifted the previously-entered stay, (2) allowed McCambridge to seek counsel up to August 24, 2016, and (3) set an August 26, 2016 deadline for filing responses to the outstanding cross-motions for summary judgment.  Order, Doc. No. 22.

The court then received additional correspondence from McCambridge indicating that he was seeking to enter into some sort of stipulation with defense counsel.  *See* Order, Doc. No. 23 (referencing correspondence).  On that same date, McCambridge filed a "Motion to allow time for parties to enter [into] a stipulation Agreement."  Doc. No. 24.  The court denied the motion on August 15, 2016. [7]  Doc. No. 25.

On August 19, 2016, McCambridge filed a motion seeking additional time – up to August 31, 2016 – to find counsel. [8]  Doc. No. 26.  On August 20, 2016, the Secretary filed a response to

---

[6] McCambridge did not file a response to the Secretary's statement of undisputed material facts in support of her motion for summary judgment.

[7] It was unclear as to the precise stipulation that the plaintiff was seeking to enter into with the Secretary. Regardless, the court denied the motion because the parties could enter into any stipulations with respect to the undisputed facts without requiring court involvement.

[8] McCambridge also posited two questions to the court, apparently seeking to have the court answer them.

McCambridge's motion for summary judgment and motion to remand.  Doc. No. 27.  The court granted McCambridge's motion seeking additional time to try to obtain counsel on August 23, 2016.  Doc. No. 28.  On that same date, McCambridge filed a response to the Secretary's motion for summary judgment.  Doc. No. 29.  On August 31, 2016, McCambridge filed a motion for appointment of counsel.  Doc. No. 30.

The cross-motions for summary judgment, the motion to remand, and the motion for the appointment of counsel are all ripe for disposition.

## II.   DISCUSSION

### A.   Standard – Motions for Summary Judgment

A district court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Additionally, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Wright v. Corning,* 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. New Jersey State Police,* 71 F.3d 480, 482 (3d Cir. 1995)).  An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id.*

The party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett,*

477 U.S. 317, 323 (1986) (internal quotation marks omitted).  Once the moving party has met this burden, the non-moving party must counter with "'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citation omitted); *see* Fed. R. Civ. P. 56(c) (stating that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . .; or . . . [by] showing that the materials cited do not establish the absence . . . of a genuine dispute").  The non-movant must show more than the "mere existence of a scintilla of evidence" for elements on which the non-movant bears the burden of production. *Anderson,* 477 U.S. 242, 252 (1986).  Bare assertions, conclusory allegations, or suspicions are insufficient to defeat summary judgment.  *See Fireman's Ins. Co. v. DuFresne,* 676 F.2d 965, 969 (3d Cir. 1982) (indicating that a party opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions"); *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir. 1999) (explaining that "speculation and conclusory allegations" do not satisfy non-moving party's duty to "set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor.").  Additionally, the non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000).  Moreover, arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

The court "may not weigh the evidence or make credibility determinations." *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Petruzzi's IGA Supermarkets., Inc.*

*v. Darling–Del. Co. Inc.*, 998 F.2d 1224, 1230 (3d Cir. 1993)).   Instead, "[w]hen considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter,* 476 F.3d 180, 184 (3d Cir. 2007). The court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252.   "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and the court should grant summary judgment in favor of the moving party. *Matsushita Elec. Indus. Co.,* 475 U.S. at 587 (citation omitted).

The summary judgment standard is the same even when, as here, the parties have filed cross-motions for summary judgment. *Erbe v. Connecticut Gen. Life Ins. Co.*, No. CIV.A. 06-113, 2009 WL 605836 at *1 (W.D. Pa. Mar. 9, 2009) (citing *Transguard Ins. Co. of Am., Inc. v. Hinchey*, 464 F. Supp. 2d 425, 430 (M.D. Pa. 2006)).   "When confronted with cross-motions for summary judgment . . . 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard.'"   *Id.* (citing *Transguard*, 464 F. Supp. 2d at 430).

## B.   Standard and Scope of Review of the Secretary's Decision

In evaluating the parties' motions, the court must apply a deferential standard to the review of the Secretary's decision.   Judicial review of an agency decision is governed by the Administrative Procedures Act ("APA").   *See Albert Einstein Med. Ctr. v. Sebelius*, 566 F.3d 368, 372 (3d Cir. 2009) (citing 5 U.S.C. § 706; 42 U.S.C. § 1395oo(f)(1)).   Pursuant to the APA, the court "can set aside the [Secretary's] decision only if it is unsupported by substantial

11

evidence, is arbitrary, capricious, an abuse of discretion, or [is] otherwise not in accordance with law." *Id.* at 372 (internal quotations and citation omitted). "Substantial evidence has been defined as more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate." *Hagans v. Commissioner of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012) (internal quotations and citation omitted). "Where the [Secretary's] findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Id.* (internal quotations and citation omitted). "When determining whether the [Secretary's] decision is supported by substantial evidence, the [c]ourt may look to any evidence in the record, regardless of whether the [Secretary] cites to it in [her] decision." *Beckett v. Leavitt*, 555 F. Supp. 2d 521, 526 (E.D. Pa. 2008) (citation omitted).

"The scope of review under the arbitrary and capricious standard is narrow, and a court is not to substitute its judgment for that of the agency." *CBS Corp. v. F.C.C.*, 663 F.3d 122, 137 (3d Cir. 2011) (internal quotations and citation omitted). "Nevertheless, the agency must reach its decision by examin[ing] the relevant data, and it must articulate a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made." *Id.* (internal quotations and citation omitted).

## C.     The Secretary's Motion for Summary Judgment

In the Secretary's motion for summary judgment, the Secretary seeks affirmation of her decisions that: (1) McCambridge was not authorized to receive direct payment under the Medicare statute as a non-physician practitioner because he is not a qualified, licensed health care provider; (2) the services for which McCambridge billed Medicare are not payable as

incident to a surgeon's services; and (3) McCambridge is not entitled to a waiver of the assessed overpayment.  The court will review each decision in turn.

The Secretary's first conclusion, that McCambridge was not authorized to receive payment under the Medicare statute for the surgical assistant services he provided as a non-physician healthcare provider, is supported by substantial evidence and in accordance with the law.  In support of her conclusion, the Secretary identified sections 1861(s)(2)(K), 1832, and 1833 of the Act, and the Medicare regulations implementing them, as enumerating the non-physician practitioner services covered by Medicare, and determined that they do not apply to the services McCambridge provided.  A.R. at 9-11.

Section 1861(s)(2)(K) of the Act identifies services performed by physician assistants, nurse practitioners, and clinical nurse specialists that are covered by Medicare.  42 U.S.C. § 1395x(s)(2)(K).   McCambridge describes his professional occupation as a "surgical first assistant" based on a course he completed with the "National Institute of First Assisting."  *In re: Peter McCambridge, C.F.A.*, DAB No. 2290, 2009 WL 5227273 at *2 (H.H.S. Dec. 17, 2009). Crucially, McCambridge does not claim to be a physician assistant, nurse practitioner, or clinical nurse specialist.   Therefore, section 1861(s)(2)(K) of the Act does not provide Medicare coverage for McCambridge's services because as a surgical first assistant (and not a physician assistant, nurse practitioner, or clinical nurse specialist) the section does not apply to him.

Section 1832 also identifies services covered by Medicare, but does not identify the services of a surgical first assistant or any similar service.  42 U.S.C. § 1395k.  Section 1833, which describes payment for services covered by Medicare, does not include the services of a surgical first assistant, and the closest similar service it includes is a reference to section 1861(s)(2)(K), which, as explained above, does not apply to McCambridge's surgical assistant

services.  42 U.S.C. § 1395l.  The Medicare regulations implementing sections 1832 and 1833 of the Act also do not describe the services of a surgical first assistant or any similar service.  42 C.F.R. §§ 410.59, 410.60, 410.62, 410.74, 410.75, 410.76.  Therefore, sections 1832 and 1833 of the Act, and the Medicare regulations implementing them, do not provide coverage for McCambridge's services because they do not provide coverage for the services of a surgical first assistant.

The Secretary's second conclusion—that the Medicare statute and regulations do not permit payment for McCambridge's services as incident to a physician's (or surgeon's) services—is also supported by substantial evidence and in accordance with the law.  In support of her conclusion, the Secretary explained that McCambridge's services: (1) are not the kind of services commonly furnished in a physician's office; (2) were not included in the physicians' bills, as McCambridge billed for them separately; and (3) are not described in the Medicare statute and regulations as a covered service.  A.R. at 12.

The Secretary appropriately identified section 410.10(b) of the Medicare regulations as defining the services that are covered by Medicare as incident to a physician's services.  A.R. at 12.  In relevant part, section 410.10(b) defines services incident to a physician's services as: "Services and supplies furnished incident to a physician's professional services, of kinds that are commonly furnished in physicians' offices and are commonly either furnished without charge or included in the physicians' bills."  42 C.F.R. § 410.10(b).  McCambridge's surgical assistant services do not qualify under section 410.10(b) because he furnished them in a hospital, in the course of inpatient surgery (not in a physician's office).  A.R. at 32, 175-229.  Furthermore, the Secretary correctly found that McCambridge's surgical assistant services were not included in the physicians' bills, as McCambridge billed for them separately.  A.R. at 95-96, 625-72.  Lastly,

14

as explained above, the Secretary properly concluded that McCambridge's surgical assistant services are not described in the Medicare statute and regulations as a covered service.   42 U.S.C. §§ 1395k; 1395l; 1395x(s)(2)(K); 42 C.F.R. §§ 410.59, 410.60, 410.62, 410.74, 410.75, 410.76.

The Secretary also properly rejected McCambridge's argument that he should receive Medicare payment for his surgical assistant services based on the fact that the payments made to him did not duplicate payments already made to a physician.  A.R. at 13.  In this regard, the Secretary concluded that whether McCambridge's surgical assistant services duplicated payments already made to a physician was not relevant, as there is no basis in the Medicare statute and regulations for covering McCambridge's surgical assistant services—regardless of whether (and in what manner) the physicians who performed the surgery were paid.  A.R. at 13.

Finally, the Secretary's third conclusion—that McCambridge was not without fault when he billed Medicare, did not disclose all material facts and furnish accurate information when he billed Medicare, and was not entitled to a waiver of recoupment for the overpayment—is supported by substantial evidence and in accordance with the law.

In reaching the third conclusion, the Secretary properly identified section 1870(b) of the Act and the Medicare Financial Management Manual ("MFMM") as governing the recoupment of Medicare overpayments from providers.  A.R. at 13-14.  Section 1870(b) of the Act waives recoupment of a Medicare overpayment if the provider was without fault.  42 U.S.C. § 1395gg(b).  The MFMM provides that a supplier is without fault if the supplier exercised reasonable care in billing for and accepting payment.  Pub. 100-6, MFMM, Chapter 3, § 90.  The MFMM defines reasonable care in billing for and accepting payment as: (1) "[making] full disclosure of all material facts;" and (2) "on the basis of information available to it, including,

but not limited to, the Medicare instructions and regulations, [having] a reasonable basis for assuming that the payment was correct[.]" *Id.*

Substantial evidence supports the Secretary's conclusion that McCambridge failed to disclose all material facts when he billed Medicare for his surgical assistant services. A.R. at 14. When McCambridge billed for his services, he listed the NPI of a physician (rather than his own NPI) as the rendering provider number and sought payment on that basis. A.R. at 625-72. Furthermore, McCambridge listed a modifying code ("80") for each of the services, which is used to represent that a physician served as the surgical assistant, when a physician was not the surgical assistant, as McCambridge is not a physician. A.R. at 688-799.

Substantial evidence also supports the Secretary's conclusion that McCambridge did not have a reasonable basis for assuming that the payment was correct. A.R. at 14. Prior to billing for the surgical first assistant services at issue in this case, McCambridge had sought Medicare enrollment as a non-physician practitioner (using the title, surgical first assistant). *In re: Peter McCambridge, C.F.A.*, DAB No. 2290, 2009 WL 5227273 at *2 (H.H.S. Dec. 17, 2009). When McCambridge's Medicare enrollment was denied because he did not meet the Medicare enrollment and related Part B coverage requirements, he pursued multiple levels of administrative appeals. *Id.* McCambridge's appeals culminated in an appeal to the DAB, which issued a final agency decision in December 2009, informing him that Medicare did not cover the surgical assistant services he sought to provide to Medicare beneficiaries. *Id.* at *1. This decision provided McCambridge with actual knowledge that he could not bill for his surgical first assistant services. Therefore, McCambridge had no reasonable basis for assuming that payment was correct.

### D.     McCambridge's Motion for Summary Judgment and Motion to Remand

The court is cognizant of the duty to liberally construe documents filed *pro se*, and that McCambridge is litigating this matter without counsel.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Nonetheless, the court finds McCambridge's motion for summary judgment and motion to remand exceedingly difficult to evaluate, as they make legal arguments in isolation without identifying what parts of the Secretary's decision are being challenged, and fail to explain why the Secretary should have relied on the authority that McCambridge purports to support his position.  *See* Plaintiff's Motion for Summary Judgment ("Pl.'s MSJ"), Doc. No. 16; Plaintiff's Motion to Remand ("Pl.'s Mot. to Remand"), Doc. No. 20; Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Remand ("Pl.'s Mem."), Doc. No. 20.[9]

The court construes the following arguments from McCambridge's motion for summary judgment.  First, McCambridge argues that the payments at issue in this matter were not duplicate claims because he used the modifier "80" at the end of the surgeon's NPI on the bills that he submitted to Medicare.  Pl.'s MSJ at 1.  Second, McCambridge claims that he has a "formal reassignment form 855R" with the surgeons, which he contends permits him to use the surgeon's NPI for billing Medicare claims.  *Id*. at 3.  Third, McCambridge argues that the initial reason why a Medicare contractor requested a refund from him was that the Medicare contractor improperly believed the services for which McCambridge billed Medicare were duplicate claims, so the refund request is without merit.  *Id.* at 4-5.  Finally, McCambridge contends that the Secretary's review of his claim should have been limited to only the Medicare contractor's initial reason for the refund request—whether the services he billed for were duplicate claims.  *Id.* at 8. Based on this contention, McCambridge argues that the Secretary should not have considered "enrollment issues for surgical first assistants" and "incident-to billing"—the very factors upon

---

[9] McCambridge's motion to remand and memorandum of law in support thereof were filed as a single continuous document with no page or paragraph numbers.  The court's references to specific pages are based on page numbers that appear in electronic filing system headers.

which the Secretary based her denial of Medicare coverage for McCambridge's services.  *Id.*; Complaint at 2.

The Secretary addressed McCambridge's duplicate claims argument in her decision, and concluded that the argument was not relevant, as her decision that Medicare did not cover his surgical assistant services was not based on whether his claims were duplicate claims.  A.R. at 13.  Instead, the Secretary's decision was based on the Medicare statute and regulations providing no basis for covering McCambridge's services—as either the services of a non-physician health care provider, or as services provided incident to a physician's services—regardless of whether (and in what manner) the physicians who performed the underlying surgery were paid.  A.R. at 9-13.  The court finds that the Secretary's decision is supported by substantial evidence and in accordance with the law, and therefore rejects McCambridge's duplicate claims argument.

McCambridge's argument—that the Secretary should not have considered anything beyond whether the services he billed for were duplicate claims—ignores the standard of review that the MAC applies when reviewing lower-level appellate decisions.  As the Third Circuit explains: "Although MAC is limited to considering only the record before it, its review of the ALJ's findings is *de novo* and MAC is not obligated to defer to the outcomes of prior decisions below."  *John Balko & Associates, Inc.,* 555 F. App'x at 193 (3d Cir. 2014) (internal quotations and citation omitted).  The MAC was permitted to review all evidence contained in the record and make its decision accordingly.  Because the court finds that the Secretary properly rejected McCambridge's duplicate claims argument, and properly considered whether his services—either provided by a surgical first assistant or incident to a physician's services—were covered by Medicare, the court will deny McCambridge's motion for summary judgment.

Regarding McCambridge's motion to remand, the court finds the motion and the supporting memorandum to be disjointed and unfocused.  McCambridge's arguments do not identify specific parts of the Secretary's decision challenged, or any legal or factual errors made by the Secretary.  *See generally* Pl.'s Mot. to Remand; Pl.'s Mem.  By way of example, in his motion to remand, McCambridge challenges the Secretary's conclusion that he was not permitted to bill for his surgical assistant services as incident to a physician's services, and cites to "FR VOL 66 page 55267 & 55268" and "section 4541(b) of the Balanced Budget Act."  Pl.'s Mot. to Remand at 2.  However, McCambridge fails to identify or explain how the pages from the Federal Register and section from the Balanced Budget Act challenge the Secretary's decision.  Furthermore, in McCambridge's supporting memorandum of law he cites statutes, regulations, pages from the Federal Register, and chapters from the CMS manual, but does not explain how or why the Secretary should have followed them instead of the law cited by the Secretary in her decision.  Pl.'s Mem. at 6-13.

To the extent that McCambridge challenges the Secretary's interpretation of the Medicare statutes upon which she based her denial of Medicare coverage for his services, the court applies the *Chevron* test.  *See Chevron, U.S.A., Inc. v. National Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).  "Under *Chevron*, we first must determine if Congress has spoken directly to the question at issue, and if Congress' intent is clear, our inquiry ends as we must give effect to the unambiguously expressed intent of Congress."  *Mercy Home Health v. Leavitt*, 436 F.3d 370, 377 (3d Cir. 2006) (citing *Chevron*, 467 U.S. at 842–43 (internal quotations omitted)).  "If we decide that Congress has not spoken directly to the issue and the statute is silent or ambiguous with respect to the specific issue, we must ask whether the agency's interpretation is based on a permissible construction of the statute."  *Id.* (internal quotations and citation omitted).  "If we

find that it is, we afford deference to that interpretation." *Id.* (internal quotations and citation omitted).

Here, sections 1861(s)(2)(K), 1832, and 1833 of the Act—which the Secretary cited in support of her conclusion that McCambridge could not bill Medicare directly as a non-physician health care provider or as incident to a physician's services—are clear and unambiguous. The statutes expressly list the non-physician health care providers and services they perform that are covered by Medicare, and a surgical first assistant is simply not listed. 42 U.S.C. §§ 1395x(s)(2)(K), 1395k, 1395l. Because the court finds that the statutes directly address the issue of whether McCambridge could bill Medicare directly as a surgical first assistant or for his services as incident to a physician's services, and that the statutes clearly do not permit McCambridge to bill for his services, the court need not continue to the second part of the test.

Nevertheless, with respect to the Secretary's interpretation of section 410.10(b) of the Medicare regulations as it relates to billing for services provided incident to a physician's services, the court "must afford substantial deference to an agency's interpretation of its own regulations." *Albert Einstein Med. Ctr.*, 566 F.3d at 373 (internal quotation and citation omitted). Indeed, the Third Circuit has noted that "[t]his broad deference is particularly appropriate in contexts that involve a complex and highly technical regulatory program, such as Medicare, which requires significant expertise and entail[s] the exercise of judgment grounded in policy concerns." *Id.* (internal quotation and citation omitted). The court finds the Secretary's interpretation of section 410.10(b) of the Medicare regulations—that Medicare does not cover surgical assistant services provided in a hospital setting during surgery as incident to a physician's services—in accordance with the law, as section 410.10(b) defines services incident to a physician's services as: "Services and supplies furnished incident to a physician's

professional services, of kinds that are commonly furnished in physicians' offices and are commonly either furnished without charge or included in the physicians' bills."   42 C.F.R. § 410.10(b).   Based on the court's difficulty evaluating McCambridge's arguments (due to the manner in which he presented them), and the court's conclusion that the Secretary's interpretation of the Medicare statutes and regulations is in accordance with the law, the court will also deny the motion to remand.

### E.      McCambridge's Request for Appointment of Counsel

McCambridge also argues that he is entitled to court-appointed counsel pursuant to 42 U.S.C. 2000e-5.  Plaintiff's Request for Appointment of Attorney ("Pl.'s Request"), Doc. No. 30. The authority McCambridge references, 42 U.S.C. 2000e-5, applies only to matters involving violations of Title VII of the Civil Rights Act of 1964, and is of no relevance here, as McCambridge has asserted no Title VII violations.  42 U.S.C. § 2000e, *et seq.*  Recognizing that McCambridge's request has been filed *pro se*, the court will consider whether any other authority supports granting his request.

Civil litigants do not have a constitutional right to counsel, and the laws under which McCambridge brings this action do not provide statutory authorization for courts to appoint counsel.  *Parham v. Johnson*, 126 F.3d 454, 456 (3d Cir. 1997) (citation omitted); 42 U.S.C. §§ 405(g), 1395ff(b).  Pursuant to 28 U.S.C. § 1915(e)(1), "[a] court may request an attorney to represent any person unable to employ counsel."  *Parham v. Johnson*, 126 F.3d at 457 (3d Cir. 1997) (quoting *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993)).  However, the Third Circuit has directed courts to "exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases."   *Id.* (citation omitted). Therefore, a court should appoint counsel only when cases "have some merit in fact and law."

*Id.* (citation omitted).  If the plaintiff's claim has merit, then the Third Circuit has suggested that the following factors serve as a guidepost to courts in determining whether to employ counsel:

> (1) the plaintiff's ability to present his or her own case;
> (2) the complexity of the legal issues;
> (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
> (4) the amount a case is likely to turn on credibility determinations;
> (5) whether the case will require the testimony of expert witnesses;
> (6) whether the plaintiff can attain and afford counsel on his own behalf.

*Id.* (citation omitted).  Without conducting an in-depth analysis of the factors—as the court does not deem it necessary under these facts—two factors dominate the court's decision to deny McCambridge's request for appointed counsel.  First, the court determines that McCambridge's underlying claim does not have merit, and concludes that summary judgment in favor of the Secretary (and against McCambridge) is appropriate in the matter underlying this request for counsel.  Second, McCambridge is able to pay for an attorney, and has indicated this in his request, stating: "I am able to pay for an attorney, provided that they[*sic*] only review the record, and the refund request.  I do not want to pay for an attorney to tell me I am not a practitioner who can bill Medicare directly."  Pl.'s Request at ¶ 2.  It appears that rather than being unable to afford an attorney, McCambridge simply does not want to pay for one.  For these reasons, the court will deny McCambridge's request for appointment of counsel.

## III.    CONCLUSION

After reviewing the cross-motions for summary judgment, McCambridge's motion to remand, McCambridge's request for appointment of counsel, the administrative record, and the Secretary's decision, the court finds the Secretary's conclusions that: (1) McCambridge was not authorized to receive payment under the Medicare statute directly as a non-physician health care provider; (2) the surgical assistant services for which McCambridge billed Medicare are not

covered as incident to a surgeon's services; and (3) McCambridge is not entitled to a waiver of the overpayment assessed against him; is supported by substantial evidence and in accordance with the law.  Furthermore, the court finds McCambridge's arguments regarding duplicate claims and the MAC's allegedly improper consideration of evidence beyond whether his claims were duplicate claims unavailing.  Therefore, the court will grant the Secretary's motion for summary judgment and deny McCambridge's motion for summary judgment.

The court also denies McCambridge's motion to remand because the Secretary correctly interpreted the applicable Medicare statutes and regulations upon which it based its denial of Medicare coverage for McCambridge's services.  The court further denies McCambridge's request for appointment of counsel as there is no basis to grant the request.

A separate order follows.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.